**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: August 21 2009

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-30254 |
| | ) | |
| Steven J. Osting, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF OPINION AND ORDER

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 20]. The court held a hearing on the motion that Debtor, his counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions. The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless he converts it to Chapter 11.

## BACKGROUND

Debtor is married and has one dependent child who is eleven years old. He is fifty-two years old and is employed as a senior engineer by First Energy Corporation, where he has worked for twenty-eight years. Debtor describes his employment as stable. Debtor's wife was involved in an accident several years ago in which she sustained injuries that prevent her from working.

On January 20, 2009, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that his debts are primarily consumer debts. His Schedule D shows total "secured" debt in the amount of $221,337, which includes $126,000 secured by a mortgage on Debtor's residence, mortgage debt of $50,767 and $39,885, both secured by mortgages on a house that is now vacant ("Chantilly Rue property"), and $4,685 secured by a 2004 Ford Escape. All of the "secured" debt set forth on Schedule D is secured by property titled in his wife's name only. He is current on his payments on the residential home mortgage as well as on both mortgages on the Chantilly Rue property and has stated an intention to reaffirm all of this secured debt. [*See* UST Ex. 2-32 and 2-33]. Debtor testified that although the Chantilly Rue property is vacant, he and his wife intend to use the property as rental property. In order to do so, however, the property requires certain repairs that he estimates will cost approximately $10,000, which funds are not available.

Debtor's bankruptcy schedules show unsecured nonpriority debt in the amount of $141,036, which consists entirely of credit card debt, and no unsecured priority debt. His schedules also show assets totaling $231,150, which includes an interest in a 401(k) plan valued at $225,000 and a personal injury lawsuit relating to his wife's accident scheduled as pending.

Debtor's amended Schedule I shows gross monthly income of $7,841 and net monthly income after payroll deductions in the amount of $5,480. His amended Schedule J shows total monthly expenses of $5,425, resulting in income after expenses in the amount of $55. Debtor's expenses include, among other things, a $720 mortgage expense for the Chantilly Rue property and $1,000 for his "wife's individual debts." According to Debtor, in addition to the mortgage expense, he pays additional expenses relating to the Chantilly Rue property for such things as utilities and maintenance that total approximately $350 per month. This amount is apparently included in his wife's individual debts of $1,000 as it is not separately set forth on Debtor's Schedule J.

Although Debtor's amended schedules do not so reflect, he testified that he is paying $930 per month as repayment of a 401(k) plan loan, which will be paid in full within three years. In addition to his 401(k) plan, Debtor has a defined benefit pension plan through his employment at First Energy. Debtor testified

2

that he has no plans to retire in the near future.

Debtor's amended Form B22A calculating the means test shows that his annualized current monthly income at the time of filing this case was $91,434. The median income for a family the size of Debtor's family in Ohio is $59,949. However, no presumption of abuse arose under § 707(b)(2) after the calculation of allowed deductions. Instead, the UST is proceeding on his timely filed motion to dismiss for abuse solely under § 707(b)(3) based on the totality of the circumstances.

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtor filed his petition in bad faith but instead contends that the totality of the circumstances show that Debtor is not needy and that he has the ability to repay a meaningful portion of his unsecured debt. A debtor is "needy" when "his financial predicament warrants the discharge of his debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private

3

negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

In arguing that Debtor has the ability to pay a meaningful portion of his unsecured debt, the UST asserts that funds used to pay expenses relating to his wife's Chantilly Rue property are not necessary and can be eliminated without depriving Debtor or his dependents of adequate food, clothing, shelter or other necessities. The court agrees. Debtor expends approximately $1,070 per month in order to hold the Chantilly Rue property with an expectation of using the property as rental property, an expectation that he admittedly is not able to fulfill. The property serves no useful purpose, and Debtor's unsecured creditors cannot fairly be expected to shoulder the resulting burden of nonpayment. With this adjustment, Debtor's monthly income after his Schedule J expenses equals $1,125.

Nevertheless, Debtor testified that he is also paying $930 per month as repayment of a 401(k) plan loan, which amount the UST argues should be considered income available to pay unsecured creditors. In determining whether a debtors' repayment of a 401(k) plan loan is reasonably necessary, the court must consider the totality of the debtor's individual circumstances. *See In re Behlke*, 358 F.3d at 435-36 (considering the debtors' accumulated retirement savings and their other personal and real property of significant future value in finding that their 401(k) contributions were not necessary for the maintenance and support of the debtors or their dependents); *In re Tucker*, 389 B.R. 535, 540-41 (Bankr. N.D. Ohio 2008) (addressing the precedent established by *Behlke* and concluding that it, as well as the plain language of § 707(b)(3), requires consideration of the totality of the debtor's individual circumstances in determining whether a debtor's 401(k) contributions are reasonably necessary); *In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (Bankr. N.D. Ohio 2007)). As one court stated, "[t]here is little reason for a 'fresh start' that will only be answered with a substantial incapacity to provide for oneself at retirement." *In re King*, 308 B.R. 522, 531 (Bankr. D. Kan. 2004). Therefore, a debtor may seek bankruptcy relief while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents. *Hebbring v. U.S. Trustee*, 463 F.3d 902, 907 (9th Cir. 2006). Factors relevant to this determination include: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings; (3) level of yearly income; (4) overall budget; (5) amount of monthly contributions; (6) needs of any dependents; and (7) other constraints that make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *In re Beckerman*, 381 B.R. at 848 (citing *Hebbring,* 463 F.3d at 907, *Taylor,* 243 F.3d

4

124, 129-30 (2d Cir. 2001)).

In this case, Debtor's income is significantly above the state median income. He not only has accumulated retirement savings of over $200,000 but he also has a defined benefit pension plan through his employer. Debtor's retirement is admittedly not imminent. At fifty-two years of age he has no plans to retire and could have ten years or more of a productive work life ahead of him, at which time his daughter will no longer be a minor requiring his support. Under these circumstances, the court does not find that Debtor's repayment of his 401(k) plan loan is reasonably necessary for the maintenance and support of Debtor or his dependents.

While the failure to timely repay his 401(k) loan will result in tax consequences that he must also address, the court believes that the availability of over $1,100 per month will allow him to pay any resulting tax debt and to develop a plan to repay a meaningful portion of his unsecured debt. The court recognizes that, according to Debtor's bankruptcy schedules, he is not eligible to convert this case to a case under Chapter 13. Because none of the property that secures debt for which Debtor is a responsible party is property of his bankruptcy estate, that debt is unsecured for purposes of determining Debtor's eligibility for Chapter 13 relief. *See* 11 U.S.C. § 506(a) (providing that an "allowed claim of a creditor secured by a lien on property *in which the estate has an interest* . . . is a secured claim to the extent of the value of *such creditor's interest in the estate's interest in such property* . . . and is an unsecured claim to the extent that the value of such creditor's interest . . .is less than the amount of such allowed claim"); *In re Fuson*, 404 B.R. 872, 876 (Bankr. S.D. Ohio 2008) (finding that a debt is unsecured for purposes of determining eligibility for Chapter 13 relief to the extent that it is secured by property in which the debtor has no interest); *In re Tomlinson*, 116 B.R. 80, 82 (Bankr. E.D. Mich. 1990) (same). As a result of the manner in which Debtor has structured his financial circumstances, his unsecured debt totals $362,373, which amount exceeds the $336,900 maximum for Chapter 13 eligibility. *See* 11 U.S.C. § 109(e). Nevertheless, Debtor may have other alternatives. For instance, he has stable employment and a regular income and may be able to propose a Chapter 11 plan that is funded by the $1,100 per month income available to him after modifying expenses as set forth above.

The availability of debtors' remedies under state law (such as a municipal court trusteeship or credit counseling proceedings that will stop wage garnishments under Ohio law) and the relief that might be afforded through private negotiations are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion,

5

*In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtor's financial problems.

Nevertheless, on balance, the court finds that granting Debtor relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the following financial circumstances: (1) Debtor has stable, regular income; (2) he has the ability to significantly reduce his expenses without depriving himself or his dependents of any necessity; (3) although his financial circumstances are structured in a manner that results in his ineligibility for Chapter 13 relief, he has other alternatives available, including converting to a Chapter 11 case; and (4) Debtor has the ability to repay a meaningful portion of his unsecured debt.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 11 case, absent which the Motion of the United States Trustee to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3) [Doc. #20] will be granted, and this case will be dismissed, by separate order of the court.